IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| S.W.F. as parent, guardian, and next friend to M.A.F., a minor,<br><br>      Plaintiff,<br><br>v.<br><br>MEAD MONTESSORI INC., d/b/a MEAD MONTESSORI SCHOOL, and ELLA JONES, Head of School, in her individual capacity,<br><br>      Defendants. | CASE NO.: |

## COMPLAINT

**COMES NOW** the Plaintiff, S.W.F., as parent, guardian, and next friend to M.A.F., a minor ("Plaintiff" or "S.W.F."), by and through undersigned counsel, Law Office of James W. Friauf, PLLC; and, for S.W.F.'s Complaint against Mead Montessori Inc., d/b/a Mead Montessori School ("Mead"), and Ella Jones, Head of School, in her individual capacity ("Jones") (collectively, Defendants), avers as follows:

### I.    <u>PARTIES</u>

1. Plaintiff is a resident citizen of the State of Tennessee, County of Knox. Plaintiff is parent, guardian, and next friend to M.A.F., a minor. M.A.F. is regarded by Defendants as "disabled" (as that term is defined by the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*, as amended, and its implementing regulations).

2. Defendant Mead is a domestic, for-profit corporation authorized to conduct business in the State of Tennessee, County of Knox. At all times material to the averments set forth herein, Defendant Mead engaged in the educational industry by providing services as a "Public Accommodation" (as that term is defined by the ADA and its implementing regulations). As part of its philosophy, Mead claims:

> Montessori education is designed to help children with their task of inner construction as they grow from childhood to maturity. It succeeds because it draws its principles from the **natural development of the child. The inherent flexibility allows the method to adapt to the needs of the individual, regardless of the level of ability, learning style or social maturity**. . . .

(emphasis added).

3. Upon information and belief, Defendant Jones is a resident citizen of the State of Tennessee, County of Knox. Defendant Jones is Head of School for Defendant Mead and its sole shareholder. Defendant Jones "regarded [M.A.F.] as disabled", (as that term is defined by the ADA and its implementing regulations). Defendant Jones personally violated the ADA by: (1) authorizing the expulsion of M.A.F. from Defendant Mead's academic program; (2) interfering with Plaintiff's attempts to exercise Plaintiff's rights pursuant to the ADA or, otherwise, coercing or intimidating Plaintiff as a direct and proximate result of Plaintiff's attempts to exercise Plaintiff's rights pursuant to the ADA; and, (3) retaliating against Plaintiff for requesting reasonable accommodations and otherwise attempting to exercise Plaintiff's rights pursuant to the ADA.

## II. JURISDICTION AND VENUE

4. Plaintiff re-alleges and incorporates by reference each averment set forth in paragraphs 1-3 herein, inclusive.

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, in that this action is brought pursuant to the ADA.

6. Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over the remaining cause of action averred in the Complaint brought pursuant to Tennessee common law: breach of contract. Such claim is so related to the claim within the original jurisdiction of this Court, the same forms part of the same case or controversy.

7. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in Knox County, Tennessee.

### III.     GENERAL ALLEGATIONS

8.     Plaintiff re-alleges and incorporates by reference each averment set forth in paragraphs 1-7 herein, inclusive.

#### A.     **M.A.F. successfully completes Defendant Mead's Toddler Program**

9.     M.A.F. enrolled in Defendants' Toddler Program in October 2018.

10.    Theresa Melloy ("Ms. Melloy") served as M.A.F.'s lead teacher during M.A.F.'s participation in the Toddler Program.

11.    M.A.F. successfully completed the Toddler Program in May 2019.

#### B.     **M.A.F., as well as other students, who successfully completed the Toddler Program advance to the Primary Program**

12.    After successfully completing Defendants' Toddler Program, M.A.F. advanced to Defendants' Primary Program, commencing in August 2019.

13.    Anna Marie Reno-Ware ("Ms. Reno-Ware") served as M.A.F.'s lead teacher during M.A.F.'s participation in the Primary Program.

14.    It was Plaintiff's intent to allow M.A.F. to participate in Defendants' Primary Program until such time as M.A.F. aged out of the program at six (6) years of age.

15.    During M.A.F.'s participation in the Toddler Program, the class consisted of 15 students. Ms. Melloy was assisted by two (2) additional teachers in the classroom; thereby, rendering the student-to-teacher ratio five (5) to one (1).

16.    During M.A.F.'s participation in the Primary Program (consisting of students age three (3) to six (6)), the class consisted of 24 students. Ms. Reno-Ware was assisted by one (1) additional teacher in the classroom; thereby, rendering the student-to-teacher ratio of 12 to one (1).

### C. Several students struggle with behavioral challenges after advancement from the Toddler Program to the Primary Program

17. Several students, including M.A.F., struggled with behavioral challenges after transitioning from the Toddler Program to the Primary Program. Upon information and belief, certain of these struggles were the result of the increase in the student-to-teacher ratio.

18. In addition to M.A.F., 10 students from the 2018-2019 Toddler Program advanced to the 2019-2020 Primary Program.

19. Accordingly, 11 of the 24 students in the 2019-2020 Primary Program were under the age of four (4) years. The remaining 13 students were four (4) to six (6) years of age.

20. Four (4) students who advanced from the 2018-2019 Toddler Program to the 2019-2020 Primary Program (including M.A.F.) consistently struggled with behavioral challenges.

### D. Defendants single out M.A.F. for reduced participation in the Primary Program despite similar behavioral challenges with three (3) other classmates.

21. Despite common-behavioral challenges of each of the four (4) students, on October 4, 2019, Defendants announced that, starting after Fall Break (October 8-12, 2019), M.A.F. would no longer be allowed to participate in afternoon class "until at least the first of November".

22. Upon information and belief, the other three (3) referenced children's school schedules were not reduced to half days.

23. S.W.F. inquired of Ms. Reno-Ware and Ms. Melloy whether Defendant Mead's decision to exclude M.A.F. from afternoon class was a step towards his suspension or expulsion from the Primary Program. S.W.F. was assured this was not the case.

24. After Defendants' decision to only allow M.A.F. to participate in morning classes, on several occasions, Ms. Reno-Ware or Ms. Melloy contacted S.W.F. requesting a pick-up time of M.A.F. prior to the applicable designated time (12:30 p.m.) commencing October 15, 2019. This further reduced M.A.F.'s ability to fully participate in Defendants' Primary Program.

25. Upon information and belief, the other three (3) children exhibiting similar behavioral challenges as M.A.F. were not reduced to half-day-school schedules.

> **F. S.W.F. actively engages with Ms. Reno-Ware and Ms. Melloy to address M.A.F.'s behavioral challenges and the possibility M.A.F. could be suffering from a sensory-processing impairment.**

26. On Monday, November 4, 2019, Ms. Reno-Ware conducted a regularly-scheduled parent/teacher conference with M.A.F.'s parents.

27. During the November 4, 2019, conference, Ms. Reno-Ware advised she enjoyed having M.A.F. in her class and was hopeful that, given time, he would transition to full school days once again.

28. On Monday, November 11, 2019, S.W.F. discussed (based on her medical background and recent medical research) with Ms. Reno-Ware the consideration that M.A.F. could be suffering from a sensory-processing impairment, which triggered behavioral challenges at school. Ms. Reno-Ware responded affirmatively and revealed that another student in the class wore a weighted vest. S.W.F. advised Ms. Reno-Ware that S.W.F was considering having M.A.F. evaluated by an occupational therapist.

29. On Thursday, November 14, 2019, S.W.F. was instructed to pick up M.A.F. early from school. Upon arriving at school, S.W.F. and Ms. Melloy had a conversation about M.A.F.'s behavioral challenges. S.W.F. sought Ms. Melloy's suggestions focusing on addressing M.A.F's behavioral challenges. S.W.F was comfortable and confident asking for guidance, as Ms. Melloy had been M.A.F.'s Toddler Program teacher. Ms. Melloy referenced her previous suggestion of using a weighted blanket to help M.A.F., which resulted in success during naptime when M.A.F. was in Ms. Melloy's class. Thereafter, Ms. Melloy suggested it might be appropriate to have M.A.F. evaluated by an occupational therapist in the event M.A.F. was suffering from a sensory-processing impairment (S.W.F. had previously discussed this issue with Ms. Reno-Ware on Monday, November 11, 2019).

30. On Friday, November 15, 2019, S.W.F. requested Ms. Reno-Ware provide S.W.F. a summary of M.A.F.'s behavior for the week. The request was for an email summary, as Ms. Reno-Ware previously

5

expressed reservation discussing M.A.F.'s behavior with S.W.F. in M.A.F.'s presence. S.W.F. agreed with this suggestion and agreed to a written summary.

31. On Monday, November 18, 2019, S.W.F. advised Ms. Reno-Ware that the requested summary regarding M.A.F.'s behavior from the prior week had not been received, as indicated. Ms. Reno-Ware advised that, once again, she had misspelled S.W.F.'s name (having done so previously on October 23, 2019) in the email address but would resend the email. S.W.F. never received the requested email.

32. On Monday, November 18, 2019, S.W.F. asked Ms. Reno-Ware to allow S.W.F. to observe the classroom, expressing concern that there was something in the classroom triggering M.A.F.'s behavior. S.W.F. also requested a list of lessons M.A.F. had available to him in the classroom for the expressed purpose of directing M.A.F. to certain lessons and easing the classroom struggles. Both such requests went unanswered.

### G. Defendants regard M.A.F. as disabled; S.W.F. attempts to medically address M.A.F.'s behavioral challenges.

33. On Tuesday, November 19, 2019, as a result of S.W.F.'s concerns that M.A.F. could be suffering from a sensory-processing impairment, S.W.F. advised Ms. Reno-Ware a rice bag was being sent to school with M.A.F., stating it is heavy and M.A.F. likes to cuddle with it.

34. On Tuesday, November 19, 2019, S.W.F. advised Ms. Reno-Ware M.A.F. had an appointment with his pediatrician on Monday, November 25, 2019. S.W.F. also advised, thereafter, she was going schedule an appointment with an occupational therapist in order to have M.A.F. formally evaluated for a sensory-processing impairment.

### H. Defendants "take the next steps" by removing M.A.F. from Defendants' academic institution not later than December 20, 2019.

35. On Wednesday, November 20, 2019, Ms. Reno-Ware contacted S.W.F. by text message at 10:44 AM EST and instructed S.W.F. to immediately pick up M.A.F. S.W.F. arrived at approximately 10:55 AM EST to collect M.A.F. from Defendant Mead.

36. At the time S.A.F. picked up M.A.F. at Defendant Mead, Ms. Reno-Ware informed S.W.F. that Defendants were sending a 30-day notice to Plaintiff advising that Defendants were removing M.A.F. from Defendants' academic program.

37. Shortly after 1:00 PM EST on Wednesday, November 20, 2019, S.W.F. received a telephone call from Ms. Melloy (in response to a voice-mail message S.W.F. left for Ms. Melloy subsequent to picking up M.A.F.). During the telephone conversation, S.W.F. and Ms. Melloy discussed that M.A.F. had an appointment scheduled with his pediatrician for Monday, November 25, 2019, to address M.A.F.'s behavioral challenges and the possibility M.A.F. was suffering from a sensory-processing impairment. It was further discussed that S.W.F. was following up with an occupational therapist. S.W.F. inquired of Ms. Melloy whether, if Plaintiff could get the behavioral challenges corrected, Defendants would permit M.A.F. to return in January 2020. Ms. Melloy advised that was not possible.

38. During the referenced telephone conversation, Ms. Melloy sent an email communication to Plaintiff confirming Defendants had "taken the next step" by removing M.A.F. from Defendants' academic program not later than December 20, 2019.

39. Ms. Melloy carbon copied Defendant Jones on her November 20, 2019, communication to S.W.F.

> **I. Plaintiff raises concerns about Defendants' expulsion of M.A.F. from the academic program in light of the possibility M.A.F. was suffering from a sensory-processing impairment; Defendants retaliate and retroactively and immediately expel M.A.F.**

40. In light of Defendants' decision to remove M.A.F. from Defendants' academic program not later than December 20, 2019, Plaintiff did not send M.A.F. to school on Thursday, November 21, 2019, or Friday, November 22, 2019.

41. In response, Ms. Melloy sent an email communication to Plaintiff at 1:16 PM EST on Friday, November 22, 2019, which: (1) provided Plaintiff with several of Defendant Jones's recommendations for an

occupational therapist to evaluate M.A.F.; and, (2) asking what Plaintiff's "plan was for the remainder of the semester."

42. At 1:35 PM EST, Plaintiff sent a responsive email communication that stated as follows:

Good Afternoon, Ms. Melloy.

We **respectfully request a meeting with Ella [Jones]** and Allison [Watson] at their earliest convenience. We are having difficulty reconciling the severity of your recommendation with regard to a three-year-old … we may have been misinformed initially when we enrolled [M.A.F.]. We were under the (mis)impression and (mis)understanding the staff at Mead Montessori School were trained professionals with regard to educating the children and **personalizing their curriculum and day-to-day interactions so as to best utilize their personal attributes and energy**.

I look forward to hearing from you.

(emphasis added).

43. At 2:18 PM EST, Defendant Jones sent a reply email communication advising Ms. Melloy had forwarded Plaintiff's 1:35 PM EST email communication to Defendant Jones.

44. Defendant Jones's email communication stated as follows:

Theresa [Melloy] forwarded your email to me, letting me know you would like to request a meeting. Based on the nature of your email, I do not feel that a meeting would be the most productive course of action at this time. Theresa [Melloy] and Anna Marie [Reno-Ware] have **keep [*sic*] me regularly informed on [M.A.F.]'s behavior at school** and kept me updated on his changing schedules and the classroom modifications they **have made to keep [M.A.F.]** and the other children **safe**. I have given my support and opinion when it is necessary and appropriate. It has become **increasingly challenging for our staff to keep [M.A.F.]** and the other children **safe** while he is in attendance and ultimately, this environment is not serving him. In order to give [M.A.F.] the support he needs, trust and communication is crucial between you, [S.W.F.], Theresa [Melloy] and Anna Marie [Reno-Ware]. Given the nature of your email to Theresa [Melloy], it seems that we will no longer be able to work together in a positive and respectful manner. **We** wish [M.A.F.] the best of luck moving forward but **will consider Wednesday, November 20th his last day of school. [M.A.F.'s] belongings will be *mailed* to your home address.**

(emphasis added).

45. At some point on Friday, November 22, 2019, Defendants placed M.A.F.'s belongings into an envelope and mailed the same to Plaintiff's address. The package was received the afternoon of Saturday, November 23, 2019.

46. Upon receiving the package, M.A.F. asked if it was for him. S.W.F. broke down crying.

47. After M.A.F. opened the package and realized it was his shoes and cup from school, he asked why those were in the package.

48. Plaintiff informed M.A.F. that he was no longer allowed to go to Defendant Mead for school.

49. M.A.F. became visibly upset and stated, "but I like school."

50. This action follows.

### IV. CAUSES OF ACTION

Public Accommodation Discrimination:

(*Title III of the Americans With Disabilities Act of 1990, as amended*)

51. Plaintiff re-alleges and incorporates by reference each averment set forth in paragraphs 1-50 herein, inclusive.

52. Defendant Mead is a "place of education". 42 U.S.C. § 12181(7)(J).

53. Plaintiff is and was a member of a protected class as a result of Defendants regarding M.A.F. as suffering from one or more disabilities. 42 U.S.C. § 12102(1)(C) and (3)(A).

54. Defendants violated Title III of the ADA by, "discriminat[ing] against [M.A.F.] on the basis of disability in the full and equal enjoyment of the . . . services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(A).

55. The foregoing conduct constitutes disability discrimination in violation of Title III of the ADA.

56. As a direct and proximate result of Defendants' disability discrimination, Plaintiff seeks preliminary, temporary, and permanent injunctive relief allowing M.A.F. immediate readmission to Defendants'

Primary Program and prohibiting Defendants from taking any retaliatory actions against Plaintiff, including, without limitation, refusing to enroll M.A.F. in Defendants' educational programs in subsequent academic years. 42 U.S.C. § 12188, *et seq.*

Retaliation, Interference, Coercion, and Intimidation:

*(Title V of the Americans With Disabilities Act of 1990, as amended)*

57. Plaintiff re-alleges and incorporates by reference each averment set forth in paragraphs 1-56 herein, inclusive.

58. Defendants' actions regarding: (1) refusual to allow M.A.F. to resume attendance in the Primary Program for the January 2020 Semester if M.A.F.'s behavioral challenges, which S.A.F. and Defendant Mead had discussed previously at length may be the result of a sensory-processing impairment; (2) retroactively and immediately expelling M.A.F. as of Wednesday, November 20, 2019, after Plaintiff requested a meeting with Defendant Jones to discuss the severity of Defendants' decision to remove M.A.F. from its academic program not later than December 20, 2019; and, (3) immediately packaging M.A.F.'s belongings and sending them to be received overnight by Plaintiff constitute retaliation, 42 U.S.C. § 12203(a), interference, coercion, and or intimidation. 42 U.S.C. § 12203(b).

59. As a direct and proximate result of Defendants' retaliation, interference, coercion, and intimidation, Plaintiff seeks preliminary, temporary, and permanent injunctive relief allowing M.A.F. immediate readmission to Defendants' Primary Program and prohibiting Defendants from taking any additional retaliatory, interfering, coercive, and/or intimidating actions against Plaintiff, including, without limitation, refusing to enroll M.A.F. in Defendants' educational programs in subsequent academic years. 42 U.S.C. § 12188, *et seq.*

Breach of Contract:

60. Plaintiff re-alleges and incorporates by reference each averment set forth in paragraphs 1-59 herein, inclusive.

61. On or about August 2019, Plaintiff entered into a valid and enforceable contract with Defendant Mead to provide educational services to M.A.F.

62. Defendant Mead materially breached its contractual obligations owed to Plaintiff by failing to permit M.A.F. to fully participate in Defendant Mead's Primary Program for the 2019-2020 School Year and, ultimately, terminating M.A.F.'s participation in Defendant Mead's Primary Program.

63. As a direct and proximate result of the foregoing breach of contract, Plaintiff has suffered damages, including the interruption to M.A.F.'s education and the expense and inconvenience of attempting to enroll M.A.F. in an alternative educational program.

## V. INJUNCTIVE RELIEF AND DAMAGES

64. Plaintiff re-alleges and incorporates by reference each averment set forth in paragraphs 1-63 herein, inclusive.

65. As a direct and proximate result of each and every one of the foregoing acts, conduct, and violations of the law alleged Plaintiff is entitled to preliminary, temporary, and permanent injunctive relief pursuant to the ADA.

66. As a direct and proximate result of Defendants' breach of contract, Plaintiff is entitled to monetary damages.

67. Plaintiff is further entitled to, and seeks recovery of, attorneys' fees and costs incurred pursuant to the ADA.

68. Plaintiff further seeks an award of pre- and post-judgment interest as permitted by law.

## VI. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests preliminary injunctive relief ordering Montessori Inc., d/b/a Mead Montessori School, and Ella Jones to immediately readmit M.A.F. to the Primary Program; and,

further ordering Defendants take no further retaliatory, interfering, coercive, and/or intimidating actions against Plaintiff.

**WHEREFORE**, Plaintiff respectfully requests temporary injunctive relief ordering Montessori Inc., d/b/a Mead Montessori School, and Ella Jones to allow M.A.F. to fully participate in its Primary Program pending final adjudication of this matter and further ordering that Defendants take no further retaliatory, interfering, coercive, and/or intimidating actions against Plaintiff.

**WHEREFORE**, Plaintiff respectfully requests permanent injunctive relief ordering Montessori Inc., d/b/a Mead Montessori School, and Ella Jones to allow M.A.F. to remain in the Primary Program until such time as he completes the Primary Program at the age of six (6) years; and, further ordering that Defendants take no further retaliatory, interfering, coercive, and/or intimidating actions against Plaintiff during M.A.F.'s academic enrollment with Defendants.

**WHEREFORE**, Plaintiff respectfully demands payment of Plaintiff's reasonable attorneys' fees and costs incurred in bringing this action pursuant to the ADA.

**WHEREFORE**, Plaintiff respectfully requests this Court award such other and further relief as may be appropriate and assess the costs of this cause against Defendants.

**Respectfully submitted** this 3rd day of December, 2019.

**S.W.F. as parent, guardian, and next friend to M.A.F., a minor**

By: /s/ James Friauf
James W. Friauf (#027238)
LAW OFFICE OF JAMES W. FRIAUF, PLLC
9724 Kingston Pike, Suite 104
Knoxville, Tennessee 37922
Tele: (865) 236-0347
Fax: (865) 512-9174
Email: james@friauflaw.com
Our File No.: 19-146-CIV

*Attorney for S.W.F. as parent, guardian, and next friend to M.A.F., a minor*